The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
Date June 27, 2019

## 2019COA95

**No. 16CA2178, *People v. Villela* — Criminal Law — Plea Agreements — Sentencing — Probation — Revocation — Resentencing**

A division of the court of appeals considers whether a plea agreement limited the trial court's discretion in sentencing the defendant not only initially, but also following the revocation of probation.  Utilizing the rule of construction espoused in *People v. Griego*, 207 P.3d 870, 872 (Colo. App. 2008), the division concludes that the plea agreement did not limit the court in re-sentencing the defendant to the range of imprisonment originally contemplated in the agreement.

The division also determines that the trial court properly re-sentenced the defendant to an aggravated range sentence based on its finding that extraordinary circumstances were present.

Court of Appeals No. 16CA2178
Boulder County District Court No. 14CR490
Honorable Patrick D. Butler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Danny Lee Villela,

Defendant-Appellant.

SENTENCE AFFIRMED

Division II
Opinion by JUDGE DAILEY
Pawar and Carparelli*, J., concur

Announced June 27, 2019

Philip J. Weiser, Attorney General, John T. Lee, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Brian Cox, Deputy State Public
Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     Defendant, Danny Lee Villela, appeals the sentence imposed following termination of his probation.  We affirm.

## I.  Background

### A.  Plea and First Probation Revocation

¶ 2     Defendant was originally charged with, among other things, menacing and six counts of child abuse after he threatened and physically abused his wife and their children.  Pursuant to a written plea agreement, he pleaded guilty to menacing and child abuse.  In the agreement, the parties agreed that the sentence to be imposed would be at the discretion of the court, but that, if the district court sentenced defendant to the custody of the Department of Corrections (DOC), the sentences would be in the presumptive range of one to three years and would run concurrently to each other.

¶ 3     Defendant requested a sentence to probation, and the district court sentenced him to five years of probation.  The next year, following a violation of the probation terms, the court revoked and reinstated defendant's probation.

## B. Second Probation Revocation

¶ 4     A year later, the People again moved to revoke defendant's probation after he escaped from his program, contacted the victim in violation of a protection order, took her truck, and fled the jurisdiction.

¶ 5     The court revoked defendant's probation. At the resentencing hearing, defendant argued that the court could impose presumptive range DOC sentences of no more than three years for each of his class 5 felonies, because he had "specifically pled guilty to the presumptive range" and his plea documents did not state "what the aggravating range was" for these crimes. However, he acknowledged that the original stipulations set forth in the plea agreement were no longer operative:

> I am fully aware of the fact that when somebody is sentenced, [if] they violate the sentence, that things like stip to no prison, stip to, you know, stip to probation, that those things do not carry over if someone violates.

¶ 6     The prosecutor noted that the plea documents set forth the potential for an aggravated range sentence, and that defendant had

2

several prior felonies that were *Blakely*-exempt factors.[1]  The prosecutor also asserted the applicable sentencing statutes permitted the court to "re-sentence[] the Defendant at its discretion" upon a probation violation.  The court agreed and found that the plea agreement advised defendant of the potential for an aggravated range sentence.

¶ 7     The prosecutor then asked the court to impose a four-and-a-half-year aggravated range DOC sentence.  In support, the prosecutor noted, among other things, defendant's numerous prior felony convictions; that defendant had pleaded guilty to a new criminal violation that involved contacting the victim and fleeing to another state while still on probation; the sadistic, violent circumstances of the original crimes; and the number of child victims involved in the original crimes.  The court imposed concurrent four-year terms in the DOC on each count.

---

[1] In *Blakely v. Washington*, 542 U.S. 296, 201 (2004), the United States Supreme Court had held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

¶ 8 Defendant appealed his DOC sentence, contending that the district court erred in imposing an aggravated range sentence because (1) it violated the stipulated sentencing range set forth in the original plea agreement; and (2) the sentence was aggravated in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). We disagree with both contentions.

## II. Terms of Plea Agreement

¶ 9 Defendant first argues that the court erred by imposing an aggravated range sentence when his probation was revoked because the original plea agreement mandated a presumptive range sentence for his crimes. We disagree.

### A. Standard of Review

¶ 10 A plea agreement's meaning is a legal question that we review de novo. *See People v. Johnson*, 999 P.2d 825, 829 (Colo. 2000).

### B. Applicable Law and Discussion

¶ 11 It is well established that when a defendant's probation is revoked, the trial court may then "impose any sentence . . . which might originally have been imposed," regardless of any sentencing concession in the original plea agreement. § 16-11-206(5), C.R.S.

4

2018; *People v. McDaniels*, 844 P.2d 1257, 1258 (Colo. App. 1992) (section 16-11-206(5) permits any sentence "which may originally have been imposed as concerning the statutory limits of the sentence unaffected by any plea bargain"), *cited with approval in Montoya v. People*, 864 P.2d 1093, 1095 (Colo. 1993).

¶ 12    Thus, "in the absence of language expressly addressing the contingency of revocation [or termination] of a conditional sentence, a sentencing stipulation will not be construed as limiting the court's discretion in the event that the defendant fails to comply with the terms of the conditional sentence originally imposed." *People v. Griego*, 207 P.3d 870, 872 (Colo. App. 2008); *see McDaniels*, 844 P.2d at 1258.

¶ 13    The facts in *McDaniels* are similar to the facts in this case. In *McDaniels*, the defendant was sentenced to a three-year term of incarceration following probation revocation, even though the original plea bargain provided that, if he were sentenced to incarceration, his sentence would not exceed two years. A division of this court held that, in resentencing defendant to prison, the court was not bound by the two-year sentencing cap. The court reasoned that the defendant received the benefit of his plea

5

agreement at the time of the initial sentencing and, following his probation violations, a "different factual predicate existed upon which sentence was imposed." 844 P.2d at 1258.[2]

¶ 14    In *Griego*, another division agreed with the analysis in *McDaniels*, concluding that a plea agreement's sentencing cap for imprisonment did not apply if the defendant received and then violated a conditional sentence. *Griego*, 207 P.3d at 872.

¶ 15    Defendant argues that *McDaniels* and *Griego* were wrongly decided, but he cites to no cases that disagree with their reasoning. Further, these cases have been cited with approval in a long line of

---

[2] That "different factual predicate" includes the circumstance(s) underlying the offender's probation violation(s). *See Montoya v. People*, 864 P.2d 1093, 1096-97 (Colo. 1993). And in resentencing the defendant, the court could consider not only the circumstances existing in the record or known to the court at the time the defendant was originally sentenced, but also any relevant circumstance that occurred or arose after the defendant's initial sentencing. *See Villanueva v. People*, 199 P.3d 1228, 1237 (Colo. 2008) (in determining the appropriate sentence after probation has been revoked, a court may consider a defendant's actions while on probation); *Montoya*, 864 P.2d at 1095 ("When a sentencing judge can identify events that occur after the time of the original penalty and justify a more severe penalty, the district judge can impose a sentence which is longer than the original sentence."); *People v. Smith*, 183 P.3d 726, 728-29 (Colo. App. 2008) (stating that on revocation of probation, the court may resentence the defendant to a longer term based on events that occurred after the original sentence).

6

decisions. *See Montoya*, 864 P.2d at 1095 (citing *McDaniels* for the proposition that section 16-11-206(5)'s language on any sentence "which might originally have been imposed or granted" refers to the statutory limits and not those in the plea bargain); *People v. Nance*, 221 P.3d 428, 433 (Colo. App. 2009) (same and concluding that the *McDaniels* holding was correct); *People v. Smith*, 183 P.3d 726, 728-29 (Colo. App. 2008) (citing *McDaniels* and rejecting argument that the aggravated prison sentence was not one that "might originally have been imposed"); *People v. Santana*, 961 P.2d 498, 500 (Colo. App. 1997) (citing *McDaniels*).

¶ 16    In addition, this reasoning is consistent with cases construing the court's broad authority to resentence an offender under section 16-11-206(5) following revocation or termination of a conditional sentence. *See Romero v. People*, 179 P.3d 984, 987, 989 (Colo. 2007) (court may increase an offender's sentence on resentencing); *People v. Adams*, 128 P.3d 260, 262 (Colo. App. 2005) (same); *see also Fierro v. People*, 206 P.3d 460, 461 (Colo. 2009) (upon revocation of probation, the court was not bound to impose the original suspended sentence).

¶ 17    Here, the plea agreement prescribed the sentence to be imposed following defendant's guilty plea, but the stipulation did not expressly address the sentence to be imposed after the initial sentencing.  Given the well-established case law, defendant could have bargained for specific language to cover this contingency, but he did not.  *See Griego*, 207 P.3d at 872 (discussing need for express language addressing contingency of revocation).

¶ 18    We reject the assertion that the plea agreement is ambiguous or still applies because defendant requested and received a probation sentence rather than a DOC sentence.  *See McDaniels*, 844 P.2d at 1258 (rejecting similar argument).  In interpreting an agreement, we must determine the meaning a reasonable person would have attached under the circumstances.  *See Craig v. People*, 986 P.2d 951, 960, 962 (Colo. 1999) (the court cannot read into the agreement a term that lacks evidentiary support in the record).  Probation is a privilege, not a right, and may be revoked if the probationer violates any condition.  *See Byrd v. People*, 58 P.3d 50, 55 (Colo. 2002); *People v. Ickler*, 877 P.2d 863, 864 (Colo. 1994).  In the absence of language to the contrary, we cannot assume that the parties intended that defendant would be granted a significant

sentence concession at his initial sentencing and then be given the same concession after serving part of his probation and violating its conditions. *See Romero*, 179 P.3d at 987 ("[I]t is reasonable that the legislature would give courts flexibility to increase a sentence when the circumstances merit it.").

¶ 19     We also reject defendant's assertion that he is entitled to specific performance of the plea agreement as he understood it. Before pleading guilty, defendant signed a written advisement that acknowledged that he understood the possibility that, if the court found aggravating circumstances, it could impose an aggravated range sentence of up to six years on each count. A defendant's "plea is not invalid merely because the defendant was not warned that upon violation of the terms of his probation, he would be subject to resentencing to anything to which he could have originally been sentenced." *People v. Marez*, 39 P.3d 1190, 1194 (Colo. 2002); *see Montoya*, 864 P.2d at 1096-97 (determining that the defendant was aware that the court could increase his sentence by finding aggravating circumstances, even if he was not specifically aware that a probation violation could result in the expansion of his original sentence).

¶ 20     We conclude that the applicable law and the record do not support defendant's contentions.  Thus, after revoking defendant's probation, the district court was free to resentence defendant to any sentence authorized by statute, including an aggravated prison sentence.

## III.  *Apprendi and Blakely Claims*

¶ 21     Next, we conclude that the district court properly sentenced defendant in the aggravated range based on its finding that extraordinary aggravating circumstances were present.

### A.  *Standard of Review*

¶ 22     Defendant concedes that he did not raise this issue in the district court and that plain error review applies.  Plain error addresses error that is both obvious and substantial.  *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

### B.  *Applicable Law and Discussion*

¶ 23     In *Blakely*, the court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490).  The statutory maximum for purposes

of *Apprendi* is the maximum sentence a trial court may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *Id.* at 303.

¶ 24    As part of the plea agreement, defendant waived his *Blakely* rights and agreed to judicial factfinding as to facts that could result in an aggravated range sentence. *See Villanueva v. People*, 199 P.3d 1228, 1235 (Colo. 2008) ("[A] defendant is free to waive his *Blakely* rights . . . .").

¶ 25    Specifically, the plea agreement provided:

> I understand that by pleading guilty and giving up my right to have a trial, I give up the right to have a jury determine, beyond a reasonable doubt, if there are aggravating facts in my case. I specifically agree that a judge and not a jury can determine the existence of aggravating facts in my case that could be used by a judge to impose a sentence to prison that is greater than the presumptive prison sentence range for the offense(s) included within this plea agreement.

¶ 26    Thus, defendant stipulated to judicial factfinding to support aggravated sentencing pursuant to section 18-1.3-401(6), C.R.S. 2018. *See Lopez v. People*, 113 P.3d 713, 719-20 (Colo. 2005). And, as noted previously, the plea agreement indicated that with a

finding of exceptional circumstances, the court could impose an aggravated range DOC sentence of up to six years.

¶ 27 Defendant's *Blakely* waiver was not invalidated because he violated his probation terms and was resentenced. *See Nance*, 221 P.3d at 432-33 ("*McDaniels* simply stands for the correct proposition that the sentence imposed upon revocation is not limited by a cap in a plea agreement" and "should not be interpreted so broadly to apply to all aspects of a plea agreement."); *Smith*, 183 P.3d at 728-29 (rejecting argument that because the original sentencing court did not find extraordinary aggravation, the aggravated prison sentence was not one that "might originally have been imposed" and violated *Blakely*).

¶ 28 Defendant argues that his consent to judicial factfinding for the purposes of *Blakely* was limited to factual findings concerning his original crimes. Specifically, he contends that he did not admit, and the court could not consider for *Blakely* purposes, that he absconded to Texas. He also appears to contend that the court did not aggravate his sentence based on his criminal record.

¶ 29 Even accepting these assertions as true, the district court, while noting that it could aggravate his sentence because of his

"new offense" and because he absconded to Texas, also relied on the extraordinary aggravating circumstances of the original crimes to aggravate his sentence.  *See* § 18-1.3-401(6).

¶ 30     "[O]ne *Blakely*-compliant or *Blakely*-exempt factor is sufficient to support an aggravated sentence," even if the court also considered factors that were not *Blakely*-compliant or *Blakely*-exempt.  *People v. Huber,* 139 P.3d 628, 634 (Colo. 2006) (quoting *Lopez,* 113 P.3d at 731).  And the court's reliance on the circumstances of the original crimes was sufficient to support the aggravated range DOC sentence.

¶ 31     Further, "independent of any concern about the adequacy of advisements or admitted facts, a court may constitutionally impose an aggravated range sentence based on a defendant's other convictions," including prior, subsequent, and "concurrent" convictions that enter prior to sentencing.  *People v. Misenhelter,* 214 P.3d 497, 502 (Colo. App. 2009), *aff'd,* 234 P.3d 657 (Colo. 2010); *see Lopez,* 113 P.3d at 723.

¶ 32     "The timing of the underlying crime is irrelevant so long as the conviction itself, with all its attendant procedural protections, is entered before being used to aggravate a sentence."  *Misenhelter v.*

*People*, 234 P.3d 657, 661 (Colo. 2010); *Smith*, 183 P.3d at 729 (rejecting *Blakely* challenge on resentencing and noting that violation of terms of probation may constitute an extraordinary aggravating circumstance under section 18-1.3-401(6)).

¶ 33     Here, the prosecution argued at sentencing that defendant's prior felony convictions were a *Blakely*-exempt factor, and the court appeared to conclude that they exposed defendant to an aggravated range sentence.  This provides a *Blakely*-exempt factor.  Therefore, the trial court properly resentenced defendant to an aggravated range sentence.

## IV.  Disposition

¶ 34     The sentence is affirmed.

JUDGE PAWAR and JUDGE CARPARELLI concur.